[Crim. No. 1016.   In Bank.—June 14, 1904.]

## Ex Parte SARAH F. LEMON, on Habeas Corpus.

MUNICIPAL CORPORATIONS — SPECIAL CHARTER — LICENSE-TAX FOR REVENUE—"MUNICIPAL AFFAIRS"—CASE AFFIRMED.—A municipal corporation existing under a special act adopted prior to the constitution of 1879, which authorized it to impose a license-tax for revenue, is not affected by general laws passed in relation to that subject-matter since the adoption of the "municipal affairs" amendment of section 6 of article XI of the constitution. *Ex parte Helm, ante,* p. 553, affirmed.

ID.—REFERENCE IN SPECIAL CHARTER TO TITLE OF CODE.—A reference in a special charter of a city to a particular title of the Political Code for its powers and provisions has the effect to make the appropriate title a part of the charter of the city.

ID.—LICENSE-TAX UPON RESTAURANTS—LAWFUL DISCRIMINATION.—An ordinance imposing a higher license-tax upon restaurants where the meals are not prepared by the proprietor or members of his family than those where the meals are so prepared is valid, and does not make an unlawful discrimination. A license ordinance may classify and tax occupations so as to grade the tax by the amount of business done, and it must be very clearly oppressive or unlawfully discriminative before the court will declare it invalid.

WRIT OF HABEAS CORPUS to the City Marshal of the City of Marysville, Yuba County, holding petitioner under a judgment of conviction in the Police Court of said city. R. R. Raisle, Judge.

The facts are stated in the opinion of the court.

Jacob Samuels, and W. H. Carlin, for Petitioner.

Arthur H. Redington, City Attorney, for Respondent.

ANGELLOTTI, J.—The petitioner seeks by this proceeding to be discharged from the custody of the marshal of the city of Marysville.

It appears from the record that she is detained in custody by virtue of a judgment of the police court of said city, pronounced upon a conviction of a violation of the provisions of a city ordinance prohibiting the carrying on of certain kinds of business therein named, without first having paid for and procured the municipal license thereby required and provided.

The particular business alleged to have been so carried on by her was that of a restaurant, and the section of the ordinance relative thereto reads as follows, viz.: "Any person or persons keeping a hotel where the charge for single meals is in every case and for every meal less than twenty-five cents, shall pay a monthly license of eight dollars, all others ten dollars; and any person or persons keeping a restaurant, boarding-house, or place where meals or board is furnished for pay, other than hotels and private boarding-houses, shall pay a monthly license of three dollars where the meals are cooked and served by a proprietor or members of his family, otherwise eight dollars; except that where the same is opened for one day or less the license shall be for three dollars. . . ."

The petitioner was charged with carrying on a restaurant where the meals were neither cooked nor served by said defendant or by any member or members of her family.

Petitioner contends that the ordinance in question, so far as it relates to the business of keeping a restaurant, is solely a revenue measure, and that in view of the provisions of section 3366 of the Political Code, enacted in the year 1901 (Stats. 1901, p. 635), the city has no power to impose a license-tax for revenue.

We consider it unnecessary to determine whether the license-tax upon the business in question imposed by this ordinance was imposed solely for revenue purposes, or whether, as contended by respondent, the imposition of such tax is a valid exercise of the police power of regulation, as we are

satisfied that the city of Marysville has the power, notwith-standing the provisions of section 3366 of the Political Code, to impose and collect license-taxes for revenue for municipal purposes.

The city of Marysville is a municipal corporation, existing under a special act of the legislature entitled "An act to reincorporate the city of Marysville," approved March 7, 1876. (Stats. 1875-1876, p. 149.)

In *Ex parte Helm, ante,* p. 553, we held that cities and towns existing under special acts of the legislature adopted prior to the taking effect of the present constitution have not been, since the adoption of the "municipal affairs" amend-ment of section 6 of article XI of the constitution, subject to or controlled by general laws, so far as "municipal affairs" are concerned, and that the provisions of such special acts, so far as they relate to "municipal affairs," cannot be af-fected by any law enacted by the legislature of the state. It was also held in that case, following *Ex parte Braun,* 141 Cal. 204, that where the power to impose a license-tax for revenue for municipal purposes is conferred upon a municipality, that power becomes a "municipal affair."

The question, then, is as to whether or not the special act under which Marysville exists, which is its legislative charter, confers upon it the power to impose a license-tax for revenue purposes.

That act does not specify the powers granted, except by reference to another statute, the provision being as follows, viz.:—

"Section 1. The territory described in section two of this act, and the inhabitants therein residing, are hereby declared to be a municipal corporation, *with the powers and under the provisions of title three of the Political Code of this state,* to be known in law as the 'City of Marysville.'"

The Political Code has always contained five titles "three," one in each of the five "parts" of such code, but the reference in question was clearly to title 3 of part 4 of said code, the expressed title of which was "The Government of Cities." Title 3 of part 1 related to the "Political Rights and Duties of Persons," title 3 of part 2 to "Legal Distances in the State," title 3 of part 3 to "Education," and title 3 of part 5 to "Publication of the Codes," while part 4 related to "The

Government of Counties, Cities, and Towns,'' title 3 thereof being entitled as above stated.

The legal effect of the reference contained in section 1 of the Marysville reincorporation act was therefore to make title 3 of part 4 of the Political Code a part of the charter of the city of Marysville. _(People_ v. _Whipple,_ 47 Cal. 592; _Buck_ v. _City of Eureka,_ 109 Cal. 504, 508.)

By the provisions of section 4408 of the Political Code, contained within that title, as such section was originally enacted, and as it existed at the time of the approval of the Marysville reincorporation act, the power to impose and collect license-taxes for revenue for municipal purposes was clearly conferred upon the common council of any city or town coming within the provisions of such title. When that title was by legislative enactment made a part of the charter of Marysville, such power was necessarily conferred upon the common council thereof.

It is unnecessary here to determine what would have been the effect of any subsequent amendment or repeal of any provision of this title relative to the power so conferred. Section 4408 has never been amended or repealed, and there has been no amendment of any section contained in the title, or any addition thereto, that in any way relates to the question under discussion.

It is further urged by petitioner that the provision of the ordinance relating to restaurants, boarding-houses, and places where meals or board is furnished for pay, other than hotels and private boarding-houses, is void, in that it unreasonably discriminates between such places where the meals are cooked and served by a proprietor or members of his family and those where the meals are not so cooked and served, the license-tax upon the former class being three dollars per month, and the tax upon the latter being eight dollars per month.

The method of classification here adopted is somewhat unique, but we cannot say that it was beyond the power of the council.

The right to regulate the license-tax to be paid by persons engaged in the same occupation according to the amount of business done is well recognized; in fact, it is often required by charter provision or legislative enactment that the license-tax shall be proportionate to the amount of business.

CXLIII. Cal.—36

The amount to be paid by those engaged in a certain business may be made to depend upon the amount of receipts from the business (*County of San Luis Obispo* v. *Greenberg,* 120 Cal. 300), or upon the amount of sales or business transacted (*Ex parte Mount,* 66 Cal. 448), or upon the amount of stock on hand (*Saks* v. *Mayer,* 120 Ala. 190). It has been held that the amount of license-tax to be paid by those engaged in the laundry business may be graded according to the number of persons employed or used, the court saying that this is one way of gauging the amount of business done by a laundry. (*Ex parte Li Protti,* 68 Cal. 635.) It has also been held that a lower rate of license-tax may be fixed for the man who sells liquor at retail at a tavern or public watering-place outside of a village, town, or city than for the person elsewhere engaged in the same business, the court saying that "The difference between the *quantum* of sales made and the prospective profit to be realized . . . is manifest to every one. This difference amply justifies the discrimination made by the ordinance." (*County of Amador* v. *Kennedy,* 70 Cal. 458.) In *Ex parte Haskell,* 112 Cal. 412, discrimination between those selling certain articles at a fixed place of business and those otherwise selling the same articles was sustained, the court holding that the legislative body had the right to discriminate between different methods of conducting the same business.

License-taxes on hotels proportioned to the number of rooms therein have been upheld (*St. Louis* v. *Bircher,* 7 Mo. App. 169), and in *Fulguin* v. *Mayor, etc.,* 8 Lea (Tenn.) 635, it was held that the exemption of hotels having less than ten rooms from the license-tax of forty dollars and one per cent of the actual rental or estimated value thereof imposed on hotels did not render the law objectionable.

The rule underlying the decisions upon the matter appears to be, that while the state, county, or city cannot discriminate in the imposition of those taxes between persons exercising the same privilege by imposing different taxes upon persons similarly situated, it may classify and tax occupations, grading the privilege tax by the amount of business done, that different methods of accomplishing this may be adopted, and that any classification reasonably designed to attain this object is within its power to make.

It is clear that, as a general rule, a restaurant or boarding-house where the meals are wholly cooked and served by the proprietor and members of his family must be a very small affair, hardly rising to the dignity of a "restaurant" or "boarding-house."

Ordinarily, the accommodations and service at such a place must necessarily be very limited, and the amount of business done must consequently be very small. There may be exceptional cases, it is true, where by reason of the magnitude of the proprietor's family a very pretentious and prosperous business might be conducted without the aid of a single employee. We must, however, judge of the reasonableness of the ordinance in question by what we know of the general conditions, and not hold it void simply because in some exceptional case it may result in imposing unequal burdens. Absolute uniformity in the practical application of laws relating to taxation can never be attained, and to prohibit the enforcement of laws which fail to bring such absolute uniformity would be to abolish all taxation.

The classification here adopted is probably no more likely to practically result in unfair discrimination between those similarly situated as to amount of business than a classification according to the number of rooms in a hotel or the number of employees in a laundry, and the ordinary effect of the enforcement of the provision as it stands will be, that those doing the greater amount of business will pay the higher tax fixed thereby.

Speaking of a somewhat similar objection to an ordinance in *Ex parte Haskell*, 112 Cal. 412, 416, this court said: "It is urged . . . that the particular provision in question is unreasonable and oppressive and that it is unequal and unlawfully discriminating. . . . A municipal ordinance must be very clearly obnoxious to such objections as those made, or some one of them, before it will be declared invalid by the courts. Every intendment is to be indulged in favor of its validity, and all doubts resolved in a way to uphold the law-making power; and a contrary conclusion will never be reached upon light consideration. It is the province and right of the municipality to regulate its local affairs—within the law, of course—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or

by-law transcends the power of the municipality, and contra-venes rights secured to the citizen by the constitution, or laws made in pursuance thereof.'' This declaration finds ample support in the authorities. In this case we cannot say that the provision in question was not a reasonable exercise of the power to fix the license-tax of restaurant and boarding-house keepers in proportion to the amount of business done.

The writ heretofore issued is discharged and the petitioner remanded.

Shaw, J., McFarland, J., Henshaw, J., and Van Dyke, J., concurred.

BEATTY, C. J., dissenting.—I dissent upon the grounds stated in my dissenting opinion in *Ex parte Braun*, 141 Cal. 204.

Lorigan, J., also dissented.