6662

### WARE SHOALS MFG. CO. v. JONES, COMPTROLLER.

1. INJUNCTION—TAXES—LICENSE—CORPORATIONS.—THE LEGISLATURE has no power to prevent the Court of Equity from enjoining the collection of an illegal tax in those cases where it does not provide an adequate legal remedy for the aggrieved taxpayer. Sec. 413, Code 1902, providing a remedy for a taxpayer paying an illegal tax to a county treasurer, does not apply to the license tax provided by the act of 1904 to be paid by corporations to the Comptroller General.

2. SUIT AGAINST STATE.—An action to enjoin the Comptroller General from collecting an illegal tax is not a suit against the State.

3. CONTRACT—LICENSE.—A CORPORATION created under the general laws under the Constitution of 1895 for formation of corporations has no such implied contract with the State as to prevent the State from thereafter requiring it to pay an annual license tax.

4. CORPORATIONS—LICENSE—CLASSIFICATION.—An act requiring a corporation engaged in manufacture to pay an annual license tax and not requiring a similar tax of individuals engaged in the same business is not void on the ground that the classification is arbitrary or unjust.

5. CONSTITUTIONAL LAW—TAXES.—Sec. 6, of art. VIII, of the Constitution of 1895, requiring taxes to be graduated and uniform applies to municipal taxes. A tax on domestic corporations based on capital stock paid in is uniform.

6. IBID.—IBID.—CORPORATIONS.—The act of 1904, imposing a license tax on the capital stock of domestic corporations paid in, is constitutional.

Petition in the original jurisdiction of this Court by Ware Shoals Mfg. Co. for injunction against A. W. Jones, Comptroller General.

*Mr. A. C. Todd,* for petitioner, cites: *Can the Court grant an injunction in this case?* Code 1902, secs. 412, 413, 414; 4 S. C., 520; 11 S. C., 510; 23 S. C., 70; 16 S. C., 32; 35 S. C., 227; 43 S. C., 547; 49 S. C., 190; 60 S. C., 1; 71 S. C., 234; 25 S. C., 416; 107 U. S., 711; 109 U. S., 446; 117 U. S., 256; 44 S. C., 256; 123 U. S., 443; 169 U. S., 466; 193 U. S., 490; 16 U. S., 194. *Are the statutes prohibiting courts from restraining collection of illegal taxes constitutional?* Code 1902, 263; 45 S. C., 520; 3 S. C.. 531; 2 S. C., 500; 23 S. C., 79; 71 S. C., 234. *Is the license act constitutional?* 4 Wheat., 518; 76 S. C., 218; 27 Sup. Ct. R., 198; Con., art. X, sec. 1, art. III, sec. 29; 14 Amend. U. S. Con.; Con., art. I, sec. 5, art. VIII, sec. 6; 165 U. S., 160; 63 S. C., 431; 113 U. S., 703; 66 S. C., 37; 38 S. C., 116; 41 S. E. R., 108; 75 S. C., 62; 6 L. R. A., 621; 12 Wheat., 419; 49 L. Ed. U. S., 666.

*Attorney General Lyon,* contra.

September 21, 1907. The opinion of the Court was delivered by

Mr. Chief Justice Pope. This is an application by the petitioner to this Court in its original jurisdiction for a writ of injunction against the respondent as Comptroller General, whereby he should be perpetually enjoined from proceeding under an act of the General Assembly, the license act of 1904, amended in 1905, to assess and charge against petitioner a tax of one-half of one mill upon each dollar of its capital stock paid in and outstanding, amounting to the sum of five hundred dollars, and upon the refusal of the petitioner to pay said tax within the times stated in the act, to proceed to collect the same as directed therein. A rule to show cause why the injunction prayed for should not be granted was issued on March 29th, 1907, directed to the respondent, and in the meantime restraining him from all further proceedings against the petitioner under said license act. The petition alleges in brief that the act in question is unconstitutional, null and void, and that the respondent is proceeding entirely without authority of law.

In considering the case made, we are met at the outset with preliminary questions of grave importance. The first of these is whether this Court has jurisdiction to hear the matter and in case it finds the act unconstitutional, it can then go forward and grant the injunction prayed for.

Section 412 of the Civil Code of 1902 provides: "The collection of taxes shall not be stayed or prevented by an injunction, writ or order issued by a court or a judge thereof." The Constitution of 1895, art. V, sec. 4, gives the Supreme Court power to issue writs or orders of injunction, mandamus, etc. A provision practically identical with this was contained in art. IV, sec. 4, of the Constitution of 1868. The inquiry then is, can the Legislature in the light of this constitutional grant of power prevent the court from issuing an injunction restraining the collection of taxes. The question has been exhaustively considered in the three

cases of *State* v. *Treasurer,* 4 S. C., 520; *State* v. *Galliard,* 11 S. C., 310; and *Chamblee* v. *Tribble,* 23 S. C., 70; the Court holding that such action on the part of the Legislature was valid. In the recent case of *Western Union Tel. Co.* v. *Winnsboro,* 71 S. C., 234, 50 S. E., 870, the holding in these cases was affirmed. In all of these cases, however, the petitioner had an adequate remedy at law, section 413 of the Code of 1902, giving the taxpayer the right to pay under protest and bring suit against the county treasurer for the recovery of taxes supposed to have been illegally paid. It can readily be seen, however, that the remedy provided by this section would not in all cases be adequate. Suppose, for example, a municipal corporation should exact a license tax of fruit vendors or barbers so exorbitant as to be absolutely prohibitive of such pursuits, will it be contended that this Court has no power to enjoin its collection? The remedy proposed of paying under protest and bringing a suit to recover would in such conceivable cases be absolutely no remedy at all. Or take the present case, where it is alleged that the suit cannot be maintained because it would, in effect, be a suit against the State; if this fact be found to be as alleged, then there is no remedy if the power to enjoin be denied, for once the taxes are paid they are beyond the reach of the party paying. In conferring the power upon the Court to issue the writs in question, the only reasonable conception is that the constitutional convention intended to grant it jurisdiction to issue the writ in such cases as it had previously exercised the power. It was well established prior to the adoption of the Constitution of 1868, that the Court by the writ of prohibition could enjoin the collection of taxes. *Burger* v. *Carter,* 1 McM., 418; *Hibernian Society* v. *Addison,* 2 S. C., 499. Therefore, when the act of the Legislature above quoted was sought to be put into effect, a diversity of judicial opinion appears. A consideration of the three leading opinions on the subject will show that even where there is an adequate remedy provided at law, the Judges are exactly divided as to whether or not the Leg-

islature had the power to prevent the issuance of the writs in question, such Justices as McIver, Moses and McGowan being of the view that such action was illegal. The power of the Court, when there is no adequate remedy, seems not to have occurred to the minds of the learned Judges who wrote the opinions above referred to. Therefore, whatever might be the law in cases where there is an adequate remedy, we shall endeavor to show that where there is no adequate remedy, the Court may stay the collection of taxes by prohibition or injunction. We propose to pursue the inquiry untrammeled by any implication seemingly arising from the discussions above referred to.

It is one of the fundamental principles of law that for every wrong or injury there must be an adequate remedy. At the common law the remedies obtainable were in many cases far from adequate. In order to supply this need, the system of equity with its great adaptability came into existence, and where the common law was inadequate the litigant had his remedy in that court. This, of course, took place only when the law by its generality and hardness, so to speak, was unable to give justice. Among the powers thus acquired was the right in certain cases to issue the preventive writ of injunction. In our State, with the development of the equity system, the number of instances in which the writ was applicable and would issue, as a remedy, increased so that at the time of the adoption of our Constitution of 1868, its usefulness in South Carolina was even more extended than in England. As was said above, one purpose for which its power was exercised was the restraining of the collection of illegal taxes. This power the Constitution left remaining in the equity court. Looking, then, to the principle, at least one of the great principles, upon which our government is founded, namely, that each of the three departments must remain forever separate and distinct, we are of the opinion that where there is no legal adequate remedy, it is beyond the power of the Legislature to say that the

collection of taxes shall not be enjoined by any writ or other order of any Court or Judge thereof.

When the Legislature provides an adequate remedy, a court of equity, upon one of its own fundamental principles, namely, that where there is an adequate remedy at law equity will not interfere, loses jurisdiction. This is no new scheme or principle. It is the very mode by which our modern law court has become so embedded with many of the beneficial remedies formerly cognizable only by a court of equity. In holding section 412, above quoted, constitutional, we think the act was regarded as practically reiterating the maxim that, where there is a legal remedy, resort cannot be had to a court of equity. In this view the opinions above referred to are sound.

This being our view of the law, the next step is to ascertain whether or not the petitioner here has an adequate legal remedy. Section 413 of the Civil Code of 1902 provides, in substance, that where taxes are charged upon the books of the county treasurer, if the person against whom they are charged deem them illegal, he shall nevertheless pay them under protest and within thirty days may bring an action against the county treasurer for recovery of the same; and if it be decided that the taxes so paid should be returned, then the Comptroller General shall issue his warrant for the refunding of the taxes so paid. It will be noticed that this act refers only to taxes charged upon the county treasurer's books and permits suit to be brought only against the county treasurer. In the case here under consideration, the taxes are charged upon the Comptroller General's books and never come under the control of a county treasurer. They are payable to the State Treasurer. It is evident, then, if we strictly construe the language of the act above referred to, that the present case is not embraced therein. Shall we so construe it? Of course, it is understood that the Legislature in passing the act could not foresee all the possible contingencies, and hence could not use language broad enough to cover all cases that might arise. When the act was passed,

the Legislature doubtless had in contemplation only the ordinary county and State taxes. The license tax here under consideration was not in existence. Therefore · it could not have been the intention to make provision for such a case. Then, too, this Court has formerly declared that this statute from its nature must be strictly construed. *Bank* v. *Cromer,* 35 S. C., 227. It in effect takes away, in the sense above indicated, a power previously exercised by a court of equity and by the Constitution conferred upon that court. Therefore, it will be taken for granted, that the Legislature meant only what it said, namely, that the act was to apply only to taxes collected by county treasurers.

Then, too, there is the fact that the State Treasurer is an officer of the State, and the act does not give permission to sue State officers, as would be necessary to a suit in case it be held that suing the Treasurer would in effect be suing the State. An extended discusssion of this question is not, we think, necessary to the determination of the case. It seems to be well settled that such a suit would, in effect, be against the State. *Lowry* v. *Thompson,* 25 S. C., 417, 1 S. E., 141, and cases cited. Under this holding, however, the present case being against the Comptroller General, would not it be a suit against the State? We think not. The doctrine is well established by a line of cases beginning with *Osborn* v. *Bank of the United States,* 9 Wheaton, 738, that a Court will restrain a State officer from executing an unconstitutional statute of the State, when to execute it would violate rights and privileges of the complainant which had been guaranteed by the Constitution, and would work irreparable damage and injury to him. The principle is discussed at length and reaffirmed in the comparatively recent case of *Pennoyer* v. *McConnaughy,* 140 U. S., 1, 35 L. Ed., 363. The distinction seems to be based on the fact that an officer while attempting to execute an unconstitutional law, is not acting by any authority of the State, and therefore, in that identical act, is not to be regarded as a State officer. For example, if the tax in ques-

tion is unlawful, then the Comptroller General, in collecting it, is not acting for the State, for it would be a contradiction to say that he acts for the State in exacting a tax not authorized by State law. On the other hand, if even an illegal tax, or an illegal deed as in *Lowry* v. *Tompkins, supra,* be in the hands of a State officer, holding it for the benefit of the State, the officer's custody of the money or paper is the State's custody, and the liability for it the State's liability.

As we have endeavored to show above, the remedy before the act in question was by prohibition or injunction, and until that remedy is specifically taken away by the establishment of an adequate legal remedy, this Court may issue these writs. Under the common law no other remedy was regarded as adequate, and in this case one not having been provided by statute, we are forced to the conclusion that the petitioner has no adequate remedy at law if the act requiring the tax is null and void.

This brings us, then, to the question of the constitutionality of the act. The statute, after requiring corporations to make certain annual reports to the Comptroller General, provides: "Every corporation organized under the laws of this State to do business for profit, other than railroad companies, express companies, street railway companies, navigation companies, water works companies, power companies, light companies, telephone companies, telegraph companies, parlor, dining and sleeping car companies, shall, upon filing the report required of them in section 1, pay to the State Treasurer on or before the first day of April in each year, an annual license fee of one-half of one mill upon each dollar in the capital stock of said corporation; said license fee shall not be less than five dollars in any case." Petitioner contends that, as its charter was issued under the laws of 1893, the act of 1904 was in effect a violation of the contract existing between itself and the State. This contention, we think, cannot be sustained. There is no express language in the charter held by the petitioner by which the State contracts not to alter any of

the provisions therein contained. Even if we concede the proposition that the State may so contract, yet where it does not do so, but on the contrary, issues the charter under general laws expressly reserving to the State the power to alter the charter at pleasure, it seems clear that such a contract cannot be implied. The charter here in question was issued subsequent to the Constitution of 1895, and was therefore, issued in contemplation of any provision contained therein. Art. IX, sec. 2, of that instrument provides: "That no charter shall be granted, changed or amended by special law, except in case of such charitable, educational, penal or reformatory corporations as may be under the control of the State, or may be provided for in this Constitution, but the General Assembly shall provide by general laws for changing or amending existing charters, and for the organization of all corporations hereafter to be created, and any such law so passed, as well as all charters now existing or hereafter created, shall be subject to future repeal or alteration. * * *" This language, it would seem, gives the Legislature almost unlimited power in this respect. And it cannot be said that the power so conferred is repugnant to the Constitution of the United States as violative of the obligation of a contract, for the reason that every contract made between the State and a corporation has in view this section of the Constitution. Nor can this provision be said to be against public policy, for the issuing of such charters is entirely within the discretion of the State. It has a right to refuse them altogether should it deem necessary and proper. Unlimited franchises and special privileges are not always beneficial to a commonwealth. Therefore, if it says to persons wishing to incorporate themselves and to enjoy the benefits of such incorporation, that the incorporation is upon condition that whenever the public welfare demands it, such change may be made in the charter as to it seems proper, the organization has no right to complain if such change is made.

Yet we must not lose sight of the fact that when incorporated, the orgaization becomes in a certain sense individualistic and is, therefore, entitled to all of the protective laws of the commonwealth. Its property cannot arbitrarily be taken from it, nor can it be unjustly discriminated against. This is one of the grounds upon which the petitioner would have the act of 1904 declared null and void. He seeks to show that while the tax here in question applies to corporations, it does not apply to individuals who are in the same line of business. Granting the contention to be true, we do not think it necessarily follows that such a classification is arbitrary or unjust. No one will deny that there are many advantages incident to corporate bodies which are not enjoyed by individual dealers. Assured duration of life, the centralization and combination of large capital, usually far surpassing that invested by individuals, and numerous other benefits conferred by the incorporation, all serve logically to place corporations in a class to themselves. Now, were the Legislature to undertake to say that certain corporations should pay the license tax here in question, while others of the same class were excepted, we think this would be justly termed a discrimination. Where, however, all corporations of like kind are put in one class and subjected to common burdens, we think it cannot be said that such action is discriminatory or arbitrary. A similar question was considered at length in the case of *Simmons* v. *Tel. Co.*, 63 S. C., 430, 41 S. E., 521, where the Court said: "Legislation is not unequal nor discriminatory in the sense of the equality clause of the Constitution, merely because it is special or limited to a particular class. The decisions of the United States Supreme Court establish that the Legislature has power to make a classification of persons or property for public purposes, provided such classification is not arbitrary and bears reasonable relation to the purpose to be accomplished, and that the equality clause is not violated when all within the designated class are treated alike."

Petitioner, relying on art. VIII, sec. 6, of the Constitution, alleges that the tax levied by the act in question is uniform and not graduated, and is, therefore, void. A consideration of that section will show that it was intended to apply to licenses imposed by municipal corporations and refers in no way whatever to franchises granted by the State. We do not think, however, that, even were the section applicable, it would be any ground upon which to hold the act void. The object of the graduation is to make such taxes as far as possible uniform. A just imposition is the end in view. Now, it will readily be conceded that, had the Legislature seen fit, instead of imposing a tax of one-half of a mill on the capital stock of its corporations, to impose a definite amount, say, five hundred dollars, or a like amount, as a privilege of doing business in the State, its power would not have been questioned. The former plan, we presume, seemed more equitable and just. Instead of making an arbitrary classification of corporations having various amounts of capital stock, the Legislature saw fit to require each to pay a certain amount upon its stock. This method causes a corporation to pay for the privilege it enjoys as measured by its capital stock. As compared with other corporations, it pays no more nor no less than it is entitled to pay. In this view, capital stock is merely a measure by which the amount to be charged for the franchise is to be ascertained. The imposition made by the act cannot, in a true sense, be said to be a tax on the capital invested. The amount so directed to be paid is for the privilege of carrying on business in the State. Apart from this privilege tax, of course, property in the State is subject to the regular levies for county and State purposes. It seems so evident that a State has a right to make such exactions from its domestic corporations, its own creatures, that no one would question its exercise. Certainly, such an exercise involves no double taxation, for the privilege is clearly one thing and the property is another. That the State has a right to tax such privileges has been held in a line of cases beginning, almost,

with the foundation of our republic. The general rule as laid down by Judge Cooley in his work on taxation is as follows: "Every person within the State owing temporary or permanent allegiance to it; all property of every description within the State and entitled to the protection of its laws; every private franchise, privilege, business, or occupation, is subject to be taxed by the State, in return for benefits received and anticipated from State government and protection."

The supreme taxing power of the State is vested in the Legislature. The presumption is that it will always exercise that power with due regard to the Constitution of the State and of the United States, and it is only where its acts are clearly unconstitutional that this Court will set them aside. Again, any doubt must always be resolved in favor of the constitutionality of its action. With these principles in mind, we do not hesitate to say, that the act here before the Court is constitutional, and the petition must be dismissed.

The judgment of this Court is, that the motion be denied and the petition dismissed.