[Civ. No. 6213. Third Appellate District.—October 13, 1939.]

ARTHUR W. HILL et al., Appellants, v. CITY OF EUREKA (a Municipal Corporation), Respondent.

Hill & Hill for Appellants.

E. S. Mitchell for Respondent.

PULLEN, P. J.—Plaintiffs, attorneys at law, duly licensed
to practice as such, and engaged in the practice of their pro-
fession in the City of Eureka, brought this action for declara-
tory relief to determine the respective rights and duties of
the parties hereto, in so far as such rights and duties are af-
fected by Ordinance No. 859 of the City of Eureka.

From a judgment of the trial court holding that the City
of Eureka had the power and authority under its charter to
pass the ordinance in question providing for the collection of
a license tax for revenue purposes on the business of practic-
ing law, plaintiffs prosecute this appeal.

The City of Eureka is a municipal corporation governed by
a freeholders' charter pursuant to section 8 of article XI of
the Constitution of California. The charter was adopted in
1895 (Stats. 1895, p. 355) and amended in 1917 (Stats. 1917,
p. 1742).

Among the provisions of its charter, and the one upon
which the city largely bases its right to enact the particular
ordinance in question, is section 43, subdivision 50 thereof:

"The Council shall have the power to pass ordinances . . .

"(50) To provide for licensing any or all business not
prohibited by law; to establish and regulate the issuing and
granting of municipal licenses, and the collection of license
taxes."

It is admitted that a municipality has no regulatory power
over the practice of the law by plaintiffs, that power vesting

in the state bar, so the single question here is as to the authority of the council to levy a tax for revenue purposes, as distinguished from a regulatory tax.

It is fundamental that a municipal corporation has only such powers as are expressly granted by its charter, and that a charter authorizing the imposition of a tax is to be strictly construed against the taxing power and in favor of the taxpayer. To this rule may be added the further qualification that where merely a power to license is given, the presumption is that it is regulatory, rather than for the production of revenue. As to this, Cooley in The Law of Taxation, fourth edition, volume 4, page 3531, says:

"The terms in which a municipality is empowered to grant licenses will be expected to indicate with sufficient precision whether the grant is conferred for the purpose of revenue, or whether, on the other hand, it is given for regulation merely. It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that a regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated."

This rule is followed in *Merced County* v. *Helm,* 102 Cal. 159 [36 Pac. 399]:

"This power to impose a license tax upon a 'business' cannot be extended to any subject not enumerated in the statute by which the power is conferred. The right to demand a license tax as the condition of engaging in any business within the county, must be expressly conferred. . . .

"Any attempt on the part of the state, or of the county as one of the subdivisions of the state, to take the property of an individual for public purposes by way of taxation, must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual as against the state . . . the proceeding is *in invitum,* and no presumption is to be indulged in favor of the right to take property, or of any intention that is not distinctly expressed in the statute under which it is sought to be taken. . . . "

To the same effect are *San Francisco & F. Land Co.* v. *Banbury*, 106 Cal. 129 [39 Pac. 439], *Hellman* v. *City of Los Angeles*, 147 Cal. 653 [82 Pac. 313], *Connelly* v. *City and County of San Francisco*, 164 Cal. 101 [127 Pac. 834], and *Whitmore* v. *Brown*, 207 Cal. 473 [279 Pac. 447].

And "the imposition of a tax by inference or implication, no matter how logical or reasonable it may seem, is universally condemned by the authorities which lay down the rule that the tax must be based upon an express statutory authority, and that doubts will be resolved against the taxing power". (*American Co.* v. *City of Lakeport*, 220 Cal. 548 [32 Pac. (2d) 622].)

Examining further section 43 of the charter it is seen the council has power to license any business not prohibited by law and to establish and regulate the issuing of municipal licenses and the collection of license taxes. There is no express grant of power to license for revenue. In *Ex parte Pfirrmann*, 134 Cal. 143 [66 Pac. 205], in considering the sufficiency of the title of the act adding section 3366 of the Political Code (Stats. 1901, p. 635) the court, under the particular rules of construction there applicable, felt justified in upholding the constitutionality of that statute and construed "license tax" as synonymous with "license fee or charge" but said that "license tax" did not always or necessarily mean the same as a license tax assessed and collected for revenue purposes.

To determine whether "to license and regulate" will be construed as empowering the corporation to exact a license for revenue, the charter of the city as a whole must be examined. (*Ex parte Frank*, 52 Cal. 606 [28 Am. Rep. 642].) In so examining the charter of the City of Eureka, we find article VI, Revenue and Taxation, embracing, apparently, all matters relating to taxation and revenue, and no reference to a right of the municipality to license for revenue is therein found. Section 77 of that article provides:

"The Council shall annually fix the rate of taxation to be levied and levy the taxes upon all property, both real and personal in the city, necessary to raise sufficient revenue to carry on the various departments of the municipal government for the current fiscal year."

The charter expressly designating the source from which *sufficient* revenue shall be raised for the operating of the city,

it would seem unnecessary to raise additional money from another source. "It is an elementary rule of construction that the expression of one excludes the other. And it is equally well settled that the court is without power to supply an omission." (*Towner* v. *Stimson*, 22 Cal. App. (2d) 178 [70 Pac. (2d) 678].) ▮▮ Since tax proceedings are *in invitum*, tax laws are strictly construed and a statute will not be held to have imposed a tax unless clear and explicit. Courts will not extend by construction a tax law to include those not described in the statute. (24 Cal. Jur., p. 26 et seq.) It will also be noted that the revenue and taxation section of the charter specifically refers to the classes of property to be taxed and prescribes, by adopting the methods of the state and county, for the assessment, equalization, collection, sale and redemption of taxable property.

▮▮ It would seem also that the general policy of the state is against the raising of revenue by the collection of direct taxes as a condition precedent to the conduct of business as being a burden upon legitimate business. (Sec. 3366, Pol. Code, Stats. 1901, p. 635.)

Respondent cites *In re Johnson*, 47 Cal. App. 465 [190 Pac. 852], *City of Redding* v. *Dozier*, 56 Cal. App. 590 [206 Pac. 465], *In re Galusha*, 184 Cal. 697 [195 Pac. 406], and *Ex parte Braun*, 141 Cal. 204 [74 Pac. 780], as supporting its contention. The first two of these cases, however, arose in cities of the sixth class which were not governed by a freeholders' charter, as in the case of Eureka. The act creating municipalities of the sixth class (Act 5233, Gen. Laws) provides specifically in section 862.12 that such municipalities shall have power to license for the purpose of revenue and regulation every and all kinds of business.

*In re Galusha, supra,* the court stated the question there involved as follow: "The only feature of the ordinance attacked is its application to the profession of an attorney at law, . . . " and concludes "There is no reason for making a particular exemption of the legal profession . . . ", which is not the question with which we are here concerned. Furthermore, the several provisions of the two charters are not so alike in their provisions as to compel an interpretation of one to be conclusive on the other. So, also, in *Ex parte Braun, supra.*

■ Again examining Ordinance No. 859 of the City of Eureka, we find it is quite obviously a police rather than a revenue measure. Section 1 requires persons to comply "with any and all regulations of such trade". Section 7 provides for inspection and empowers the police to enter and examine all places, without a warrant, to file criminal charges against nontaxpayers, and for a failure to diligently enforce the law, subjects such officers to suspension or dismissal from their office. Section 8 provides for a criminal prosecution for a violation of the provisions of the ordinance, including the failure to pay the tax, which is not the method of enforcement of payment of a license for revenue.

From what is found in the charter and the ordinance enacted thereunder it would therefore appear that the ordinance in question is one of regulation primarily and not a license for revenue. The judgment therefore must be reversed and it is so ordered.

Tuttle, J., and Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 11, 1939.