[Civ. No. 12373. First Dist., Div. One. July 12, 1943.]

CITY OF SAN MATEO, Appellant, v. HUGH F. MULLIN, JR., Respondent.

Ernest A. Wilson, City Attorney, Kirkbride & Wilson, Frank B. Ingersoll, Jr., and Arthur J. Harzfeld for Appellant.

F. E. Hoffmann and J. W. Coleberd for Respondent.

WARD, J.—This is an action by plaintiff city against defendant, a practicing attorney-at-law, for the collection of a license tax fee due under the provisions of an ordinance of the city of San Mateo for a period from July 1, 1936 to June 30, 1940. Based upon a finding and conclusion of law that the tax was unconstitutional, judgment was rendered for defendant. The city appeals from the judgment.

In June 1932 the City Council of the City of San Mateo passed and adopted ordinance No. 373 entitled ''San Mateo Business License Ordinance,'' which in brief provides that persons engaged in businesses, trades, callings or professions, including that of attorney-at-law, shall pay an annual license tax. The ordinance was amended in April 1936 to provide that where two or more persons of like businesses, trade, calling or profession are associated as partners, or as employer and employee, then an additional license tax in a less amount shall be paid for each additional person after the first.

The trial court declared ''That section 8.25 of ordinance

number 373 of the City of San Mateo, as amended, requires a license tax to be paid by attorneys at law, engaged in the practice of law in plaintiff city, unequal in amount, and that said section of said ordinance is discriminatory and that the provisions thereof are, by reason of inequality and lack of uniformity, with respect to the license tax required to be paid by such attorneys, in conflict with section 1 of Article XIV of the Constitution of the United States, and section 11 of Article I of the Constitution of the State of California and are therefore void.''

In the imposition of the tax herein—a municipal affair—the municipality, unless prohibited by statute, has the right and power to impose the tax, not for the purpose of regulating the conduct of defendant's practice, but for revenue. (*West Coast Adver. Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138]; *In re Nowak,* 184 Cal. 701 [195 P. 402]; *Hill* v. *City of Eureka,* 35 Cal.App.2d 154 [94 P.2d 1025].)

It is the rule that the requirement of the State Bar Act of payment of an annual fee for the *privilege* of practicing law does not preclude the imposition of a municipal license tax on attorneys who conduct the *business* of practicing law. (*In re Galusha,* 184 Cal. 697 [195 P. 406]; *In re Johnson,* 47 Cal.App. 465 [190 P. 852].) The above ordinance provides that unless he pays a license tax it shall be unlawful for an attorney to carry on his profession in the municipality.

When a license measure is unreasonable, or an arbitrary yardstick is used, or there is a failure to define sufficiently the subject of the tax, the courts have been prompt to declare it unconstitutional. In *City of Los Angeles* v. *Lankershim,* 160 Cal. 800 [118 P. 215], the court held an occupational license tax upon the owner of a building containing thirty office rooms for rent, and exempting the owner of a similar building of twenty-nine rooms, to be an unlawful discrimination. A health measure completely exempting one class imposes a burden upon a selected class of merchants. (*Justensen's F.S. Inc.* v. *City of Tulare,* 12 Cal.2d 324 [84 P.2d 140].) A tax upon a business, which gives a preference to those within the confines of a municipality, unless based upon a reasonable distinction, is invalid. (*Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895].) A tax imposed upon those engaged in the same busi-

ness, variable in amount according to the volume of business done, estimated in any reasonable way, is valid, though a tax upon slot vending machines, which provides a different rate for those ejecting or delivering raisins, is invalid. (*Matter of Application of Richardson*, 170 Cal. 68 [148 P. 213].) An ordinance which fails to define adequately the subject of the tax has been disapproved. (*Barker Bros., Inc.* v. *Los Angeles*, 10 Cal.2d 603 [76 P.2d 97].) Many other instances might be mentioned, but the requirement of constitutionality must in each case be met by demonstrating that the classification is not oppressive against persons or classes. (*Madden* v. *Kentucky*, 309 U.S. 83 [60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383].)

 A difference in the method of conducting a business is generally a sound basis for classification, particularly if it appears that the tax was fixed in proportion to the amount of business, which may be determined by different but reasonable methods. (*Ex parte Lemon*, 143 Cal. 558 [77 P. 455, 65 L.R.A. 946].) The method of conducting one business may not furnish basis for a reasonable classification, whereas in another it may. As an instance: in a grocery concern the association of several partners may result in divided responsibility, but a material increase in business does not necessarily follow as in the case of a business association furnishing personal services. An association, as such, of chiropractors, osteopaths or physicians and surgeons in their respective capacities, or as employer and employee, should ordinarily result in a greater volume of business than where one individual practices alone. The practice of the law by an association of persons results in certain economy to them through the joint use of library, stenographic facilities, etc., and to the client as the result of opportunity for conference among the associates, and the ability to obtain advice and assistance from one associate in the absence of another. The activities of the group constitute but one business although each member thereof renders individual services, and such association furnishes a reasonable basis for varying the amount of the taxes. (*Ex parte Haskell*, 112 Cal. 412 [44 P. 725, 32 L.R.A. 527].) The method of operation resulting in superior or more convenient service furnishes a reason for a distinct and separate classification. The power to license a business for the purpose of rev-

enue involves the right to make distinctions between essentially different methods of conducting the same general character of business. In *Ex parte Haskell, supra,* it was held that the manner of conducting a business, in one instance as a traveling salesman, and in a second as a merchant in a fixed place of business, is distinctive for the purpose of taxation. In *Continental B. Co.* v. *City of Escondido,* 21 Cal.App.2d 388 [69 P.2d 181], it was held that the fact that bakeries within the city paid ad valorem taxes while those without did not, furnished sufficient justification for a greater license fee imposed upon the latter. In *Riley* v. *Chambers,* 181 Cal. 589 [185 P. 855, 8 A.L.R. 418], a larger license fee for real estate brokers than salesmen was upheld. The association of a broker and salesman in the same business under one name or title is of such common practice that courts may take judicial cognizance of such fact. In *Ware Shoals Mfg. Co.* v. *Jones,* 78 S.C. 211 [58 S.E. 811], the court held that there is an advantage in the corporate form of organization which justified a different tax treatment. In *State* v. *Razook,* 179 N.C. 708 [103 S.E. 67], an auctioneer's license ordinance exempted those who did not use the auction method more than one day in six months. A butcher, and a farmer selling meat as an incident to his business, may, in a scheme of taxation, be in different classes. (*Davis* v. *Mayor and Council of Macon,* 64 Ga. 128 [37 Am. Rep. 60].) A classification of theatres based upon price of admission has been held valid. (*Metropolis Theatre Co.* v. *Chicago,* 228 U.S. 61 [33 S.Ct. 441, 57 L.Ed. 730].) ▇ The amount of a license tax may be graded "according to the number of persons employed or used." (*Ex parte Lemon, supra,* p. 562.) It is possible that four persons used in the conduct of a business may do less work and bring in less financial return than a business conducted by two, but the legislative body is permitted "to take a practical view of the question and legislate accordingly." (*Ex parte Sisto Li Protti,* 68 Cal. 635, 637 [10 P. 113].) In *Ferran* v. *City of Palo Alto,* 50 Cal.App.2d 374 [122 P.2d 965], this method of estimating the amount of business is recognized though at page 382 the court said: "When we speak of the size of the plant and adopt as the measure the number of employees therein, we are not speaking of mere physical dimensions of buildings, or the like, but of the size of the group employed, which

is very definitely related to the volume of business done, in that productive labor produces quantity or volume of output and affects the amount of business done in terms of dollar and cent value.'' The court held, however, that a license fee could not be similarly computed based upon the number of employees in a plant outside of the municipality.

The number of persons used in the conduct of a business may not be a perfect way of determining the amount of a license fee, but ''it is *one* way of doing so, and for aught we know, the safest way. . . . But it is fair to presume that no more persons are employed in such establishments than is necessary to the performance of the work, and as a consequence, that the amount of business done by such establishments is in proportion to the number of persons employed therein.'' (*Ex parte Sisto Li Protti, supra,* p. 636.) In *Bramman* v. *City of Alameda,* 162 Cal. 648, 653-654 [124 P. 243], the court said: ''Within the rule of the authorities, as the classification may be accomplished in a variety of ways, any gradation will be sustained which is reasonable and fair and equally affects all within the class to which it is applied. And among the varying standards which may be adopted, certainly it cannot be objected to as unfair or unreasonable that as to a business class a reasonable distinction between members of the class cannot be based upon the number of vehicles and animals which are used in the prosecution of the business. This, as in the case of distinguishing a class *by the number of persons engaged in the conduct of the business,* is a method of gauging the amount of business done or the capital employed therein and imposing a license-tax upon the occupation under such gradation. Such a classification is recognized as a proper one in Dillon on Municipal Corporations, section 1410, volume 4 (5th ed.) p. 2473. (See, also, *Wilson et al.* v. *City of Lexington,* 105 Ky. 765 [49 S.W. 806, 50 S.W. 834].)'' (italics added)

In *Ex parte Lemon, supra,* and *Ex parte Sisto Li Protti, supra,* the language is—persons employed or used. If it is fair and reasonable to fix the license fee in accordance with the number of persons employed, it may with equal force and effect be said that the number ''used'' or ''engaged'' in the conduct of the business gives a sounder basis for determining the fair amount of the license fee. The number of employees may vary to a greater extent than the number of employers.

If the employers are "used" or "engaged" in producing or contributing to the output or the results of the business, it does not appear that it is unfair or unreasonable to group employer workers and listed employees. They all tend to increase the size of the business and the financial returns.

■ Respondent contends that there is discrimination against him by reason of the fact that in the conduct of his profession he is taxed $15 while some of the associates of law firms pay only $5 for the same privilege. There may be some confusion in differentiating between the right to practice law, evidenced by a certificate issued by the state, and the privilege of conducting a legal business in a municipality. While the state certificate is a prerequisite to practice, the actual practice is a business. (*In re Galusha, supra.*) The tax is levied upon the business and not the person. Whether that business is conducted by one, or more than one, associated as partners or as employer and employee, it is still in the class of business as that word is used in the ordinance. If a firm of legal associates paid less than respondent as an individual, he might be aggrieved, but when each "business" individually or as a firm pays the minimum tax of $15, respondent cannot justly claim discrimination. There may seem to be a discrimination between an individual and an individual plus an employee, or a firm of associated or employee attorneys, but such a discrimination, if it existed, would not be a matter in which the individual respondent would be aggrieved, and, as we have herein held, such method of fixing license taxes has been approved. ■ An employer and an employee may be taxed and the employer actually pay or be held responsible for the tax, and the designation of the tax, whether imposed upon property or upon "the exercise of personal rights and privileges," is not controlling in determining its constitutionality. (*Carmichael* v. *Southern Coal Co.,* 301 U.S. 495, 508 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327].) The exemption of some employers or employees "is peculiarly a question for legislative decision." (*Carmichael* v. *Southern Coal Co., supra,* p. 511.)

The amount of the tax is not in restraint of trade and not against public policy. In reaching the conclusion that the license tax herein is not unconstitutional, we have been guided by the rules set forth by the Supreme Court of this state and the Supreme Court of the United States. In *Ex parte Haskell, supra,* p. 417, the court said: "The very power to license for purposes of regulation and revenue involves the

right to make distinctions between different trades and between essentially different methods of conducting the same general character of business or trade." ". . . legislatures possess the greatest freedom in classification." (*Madden* v. *Kentucky, supra,* p. 88.) Where the terms of a license ordinance may be capable of several constructions, its constitutionality should be upheld. (*Edwards* v. *City of Los Angeles,* 48 Cal.App.2d 62 [119 P.2d 370].) In *Carmichael* v. *Southern Coal Co., supra,* involving a tax upon employers and employees, the court said (pp. 509-510) : "It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. See *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U.S. 232, 237 [10 S.Ct. 533, 33 L.Ed 892] ; *Lawrence* v. *State Tax Com.,* 286 U.S. 276, 284 [52 S.Ct. 556, 76 L.Ed. 1102]. This court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [citing cases]

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [citing cases]

"This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

In *Gillum* v. *Johnson,* 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595], involving the State Unemployment Re-

serves Act (Stats. 1935, p. 1226), the court said (p. 759): "The employers so classified are those who are subject to the payroll tax imposed by the federal government, namely, employers having eight or more employees, with employees in certain lines of employment exempted. Obviously the charge that the whole plan of federal-state unemployment insurance as outlined in the two statutes is unworkable would seem to have more merit if it were made to apply to employers of every sort without regard to the nature of the employment or the number of employees. The difficulties of enforcement and administration might thus be so greatly multiplied as to destroy the plan entirely. It is well established that the matter of classification is primarily one for legislative determination and no argument has been advanced which would compel the conclusion that in its taxing features the classifications laid down are so arbitrary or unreasonable as to require judicial condemnation."

The judgment is reversed.

Peters, P. J., and Knight, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 8, 1943.