[Crim. No. 248.   Third Appellate District.—April 14, 1914.]

## In the Matter of the Application of J. B. PRENTICE for a Writ of Habeas Corpus.

MUNICIPAL CORPORATIONS—EXACTING LICENSE OF PLUMBERS—CONSTITUTIONALITY OF ORDINANCE.—The city of Stockton has power under its charter (Stats. 1889, p. 577; 1905, pp. 832, 859; 1911, pp. 274, 279) to exact a license of master plumbers as a condition to their right to engage in the plumbing business.

ID.—ORDINANCE REQUIRING LICENSE OF PLUMBERS—WHETHER IN CONFLICT WITH STATUTE.—The ordinance exacting such license is not in conflict with the act of the legislature (Stats 1885, p. 12; 1887, p. 58) granting to boards of health the power to regulate the plumbing and drainage of buildings and to provide for the regulation of plumbers.

ID.—FREEHOLDERS' CHARTER—AUTHORITY TO IMPOSE LICENSE.—Since the city of Stockton is conducting its government under a freeholders' charter, it has power to legislate, concerning "municipal affairs," uncontrolled by general law, and the imposition of a license-tax is a "municipal affair."

APPLICATION for a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

C. M. Gill, for Petitioner.

De Witt Clary, for Respondent.

CHIPMAN, P. J.—Petitioner was convicted of the crime of conducting a business as master plumber in the city of

Stockton without first having obtained a license therefor from the tax-collector of said city, in violation of the provisions of ordinance numbered 516 of said city.

It is claimed that said ordinance is unconstitutional and void because in conflict with the act of March 3, 1885 (Stats. 1885, p. 12), as amended by act of March 9, 1887 (Stats. 1887, p. 58), an act entitled "An act to grant to boards of health or health officers, in cities, and cities and counties, the power to regulate the plumbing and drainage of buildings and to provide for the regulation of plumbers."

Sections 42, 43 and 44 of the ordinance in question provide that "no person, firm or corporation shall in the city of Stockton engage in or work at the business of plumbing as a master-plumber unless such person . . . shall have first obtained a license therefor from the city clerk and license-collector . . . as hereinafter provided." (Sec. 41.) The application for license must be accompanied by an affidavit showing "the name, age and place of business of said applicant and also stating the number of years during which said applicant has carried on business as a master plumber or journeyman plumber." All licenses shall show the name, age, and place of business of the applicant and it is made the duty of the city clerk to keep a record of all licenses. (Sec. 42.) No license shall be for a period longer than one year and when the license has expired application shall be made for the renewal. (Sec. 44.) It is made unlawful for any plumber (except a licensed master plumber or his employee) to engage in the business of plumbing in the city of Stockton, or "to make any connection with sewers, drain, soil or waste pipes or any pipes connected therewith in said city" (sec. 46), and section 47 requires the payment of ten dollars annually for such license.

. It is claimed that the statute law provides a complete procedure for obtaining plumbers' licenses and that the ordinance endeavors to provide a different procedure; that the statute requires an applicant for license to take an examination before the board of health of the city, while the city ordinance delegates the power to the city clerk and license clerk of the city; that section 43 of the ordinance provides "for an informal examination in the form of an affidavit" which, it is contended, is in conflict with the statute. Furthermore,

that the ordinance permits master plumbers to engage in their business or trade on terms declared to be unlawful by the general law.

Reliance is placed upon *Ex parte Grey,* 11 Cal. App. 125, [104 Pac. 476]. In that case the city of San Jose by an ordinance undertook to confer power on the board of police and fire commissioners to appoint a board of plumbing examiners to examine and issue licenses to plumbers. It was held that the city had no power to delegate such power to another body or person and hence the ordinance was void as in conflict with general law.

By section 30 of the charter of the city of Stockton, act of March 2, 1889 (Stats. 1889, p. 577), as amended (Stats. 1905, pp. 832, 859), the council is given power "to establish and regulate the issuing and granting of municipal licenses and the collecting of license taxes." (Subd. 35.) By an amendment, section 70, subdivision 31, the city is given power "To license for purpose of regulation and revenue all and every kind of business transacted in the city; to fix the rates or licenses of the same and to provide for the collection thereof by suit or otherwise." (Ex. Sess. Stats. 1911, pp. 274, 279.)

The city of Stockton is conducting its government under a freeholders' charter. Concerning "municipal affairs," it has power to legislate uncontrolled by general law. (Const., art. XI, sec. 6.) A municipal affair is one which refers to the internal business affairs of the municipality. (*Fragley* v. *Phelan,* 126 Cal. 383, [58 Pac. 923].) Where the power to impose a license-tax for revenue is conferred upon a municipality, the power becomes a municipal affair within the meaning of those words in the constitution (*Ex parte Braun,* 141 Cal. 204, [74 Pac. 708]); and ordinances passed for the purposes of revenue are valid exercise of power if the municipality by its charter has been given such power. (*Ex parte Helm,* 143 Cal. 553, [77 Pac. 453]; *Ex parte Lemon,* 143 Cal. 558, [65 L. R. A. 946, 77 Pac. 455].)

We think that subdivision 35, section 30, of the Stockton charter confers the power and it is expressly given by the amendment of 1911.

The writ is denied.

Hart, J., and Burnett, J., concurred.