[Civ. No. 18802. Second Dist., Div. Three. Apr. 29, 1952.]

R. W. AGNEW, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and James A. Doherty, Deputy City Attorney, for Appellants.

R. W. Agnew, in pro. per., for Respondent.

VALLÉE, J.—Plaintiff brought this suit for a decree declaring that sections 93.64 and 93.65 of the Electrical Code of Los Angeles (Mun. Code, art. 3, ch. 9, enacted November 12, 1948, effective January 1, 1949) are invalid, and to enjoin their enforcement. Plaintiff had a decree as prayed. Defendants appeal.

Section 93.64[1] provides that every person operating as an electrical contractor, who desires to obtain permits for electrical installations and wiring, shall register and pay "a permit service fee of $100.00 to defray expenses of miscellaneous inspections, reinspections and other services not specifically mentioned" in the electrical code. The fee is collected annually on and after January 1st for each calendar year. No permit may be issued to any licensed contractor who has not registered and paid the fee for the current year. Any person who has registered and paid the registration fee as provided in sections 93.561[2] and 93.573,[3] and any dwelling owner qualified under section 93.568, is excepted.

[1] "Sec. 93.64. Every person, firm or corporation operating as an electrical contractor, desiring to obtain permits from the City of Los Angeles for electrical installations and wiring shall register with the Electrical Division of the Department of Building and Safety and shall pay to the Board a permit service fee of $100.00 to defray expenses of miscellaneous inspections, reinspections and other services not specifically mentioned in this Article. [This "Article" is the Electrical Code.]

"The permit service fee shall be collected annually on or after January 1st for each calendar year, and no permits for electrical installations or wiring shall be issued to any licensed contractor who has not registered and paid the permit service fee for the current year as provided in this section.

"EXCEPTION: This section shall not apply to any person who has registered and paid the registration fee as provided in Sections 93.561 and 93.573 of this Code, nor to any dwelling owner qualified under Section 93.568 of this Code." The exception appended to section 93.64 was enacted February 7, 1949.

[2] "Sec. 93.561. No person shall engage in or carry on the business of electrical contracting or install, alter or repair any electrical wiring, unless such person shall have first registered at the office of the Board and obtained a certificate of registration so to do as provided in this Article."

[3] "Sec. 93.573. Every person, before being entitled to be registered or to obtain a certificate of registration as in this Article provided, shall pay to the Board of Building and Safety Commissioners a registration fee of $100. Any person engaged in the business of maintaining, repairing or installing electrical wiring, connections, fixtures or other electrical appliances within his own store, building or industrial plant shall, at the time of filing such application, pay to the Board of Building and Safety Commissioners a registration fee of $10.00."

Section 93.65[4] provides that before a permit for electrical installations or wiring may be issued to any person such person shall furnish an approved surety bond in the sum of $1,000 to the city, payable to persons damaged by reason of any violation of the electrical code.

Plaintiff is an electrical contractor duly licensed by the state pursuant to the provisions of the Business and Professions Code. Defendants threaten to prosecute him criminally should he fail to comply with sections 93.64 and 93.65. The court concluded that section 93.64 is invalid for the reason it is regulatory in nature and for the further reason it is arbitrary, unreasonable and uncertain. It concluded that section 93.65 is invalid for the reason the city has sought to impose conditions, regulations and restrictions which it has no power to impose on electrical contractors licensed pursuant to the Business and Professions Code.

██ "Any . . . city . . . may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Const., art. XI, § 11.) The last clause of this section is a limitation on the power of municipalities, from whatever source the power is derived. (*In re Sic*, 73 Cal. 142, 148 [14 P. 405]; *In re Mingo*, 190 Cal. 769, 773 [214 P. 850].) ██ A local ordinance is in conflict with general law if the general law occupies the entire field, leaving no room for local regulations. Mr. Chief Justice Gibson, writing for the court in *Pipoly* v. *Benson*, 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], stated that the general rule permitting the adoption of local regulations in the form of additional reasonable requirements not in conflict with general law is subject to the exception that the local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by the general law.

---

[4]"Sec. 95.65. Before permits for electrical installations or wiring may be issued to any person, firm or corporation operating as an electrical contractor or contractors, said contractor or contractors shall furnish a surety bond executed to the City of Los Angeles. In form, said surety bond must be 'Joint and Several,' and in the sum of $1,000.00. This bond must be conditioned that the whole or any part thereof shall be paid to any person who has suffered damage by reason of the violation of any of the provisions of this Chapter. Such bond shall not be void upon the first recovery, but may be sued and recovered upon from time to time by any person who has suffered damages as herein referred to, in his own name, until the whole penalty is exhausted. The sufficiency of the surety company in any such bond shall be approved by the Board of Safety Commissioners and every such bond shall be approved as to form by the City Attorney."

Defendants contend that sections 93.64 and 93.65 do not conflict with the Business and Professions Code. Plaintiff says they do. We have concluded they do.

The Business and Professions Code (div. 3, ch. 9), sometimes called the "Contractors' License Act," creates a "Contractors' State License Board," referred to as the board (Bus. & Prof. Code, § 7000); defines those coming within the jurisdiction of the board, including electrical contractors (§ 7026); prohibits any person from engaging in the business or acting in the capacity of a contractor without first having obtained a state license, and makes it a misdemeanor to do so (§§ 7028, 7030); provides for investigation and examination of applicants for license (§ 7072[5]); requires the payment of an application fee, annual renewal fees, and penalties (§ 7137); makes elaborate provision for investigation of the acts of contractors, accusations against them, causes for disciplinary action, hearings, review, discipline, prosecution of violations of any law, and renewal or reissuance of suspended or revoked licenses (§§ 155, 7090-7122); and vests broad powers in the board relative to the licensing and regulation of contractors (§§ 7000-7145).

Wilful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, constitutes a cause for disciplinary action. (§ 7110.) Section 7071.5 provides that before reinstatement after disciplinary action the board may require the applicant to give a surety bond or make a cash deposit conditioned upon his compliance with the provisions of the act. Every person injured by the unlawful acts or omissions of such contractor may maintain an action on the bond or a claim on the deposit.

■ The intent of the Legislature in adopting the general scheme for the licensing and regulation of contractors is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. ■ It was clearly the intention of the Legislature to declare that the licensing and regulation of contractors by the state shall be the only licensing and regulation in the state. This does not limit the right of a city or county to protect life and property by the enforcement of local regulations as to the character and quality of electrical installations. (Bus. & Prof. Code, § 7110.)

---

[5]The regulations of the board require a written examination. (Cal. Admin. Code, title 16, §§ 764-776.)

We are of the view that *Horwith* v. *City of Fresno*, 74 Cal.App.2d 443 [168 P.2d 767], *City & County of San Francisco* v. *Boss*, 83 Cal.App.2d 445 [189 P.2d 32], and *Collins* v. *Priest*, 95 Cal.App.2d 179 [212 P.2d 269], are determinative of the questions presented. A hearing was denied in each of those cases. Each of them held: 1) the licensing of contractors throughout the state is a matter of general and state-wide concern, and is not a municipal affair that concerns only the inhabitants of a chartered city and which is subject to local regulation; 2) the state, by the provisions of the Business and Professions Code to which we have referred, has adopted a broad and comprehensive plan for licensing contractors throughout the state, for examination as to their qualifications and fitness to engage in their various activities, for licensing only those who prove themselves qualified by satisfactorily passing examinations, and for punishing those who prove themselves incompetent or unfaithful to the trust imposed in them; 3) the general law has fully occupied the field; 4) a state license implies permission to the licensee to conduct his business at any place in the state, and this permission should not be circumscribed by local authorities; 5) a city ordinance is invalid if it attempts to impose additional requirements. (See, also, *In re Means*, 14 Cal.2d 254 [93 P.2d 105].)

In the Horwith case (74 Cal.App.2d 443) the court declared, page 448: ''The state license implies permission to the licensee to conduct his business at any place within the state. This permission should not be circumscribed by local authorities. This does not limit the right of local governmental agencies to protect property and life through the enforcement of local regulations as to the quality and character of the installations. The right to enforce local ordinances is still in the hands of municipalities through the power of inspections and permits.''

In the Boss case (83 Cal.App.2d 445), it was held that San Francisco could not recover unpaid license taxes for the fiscal years 1943-1946 from a painting contractor who had not obtained a certificate from the city to the effect that he was registered as a licensed contractor as required by a city ordinance. The ordinance provided that all amounts received from the issuance of these certificates ''shall be used to defray the cost of making the investigations and reports and furnishing the information mentioned in Section 205 of

this Article." Section 205 provided that any contractor may apply to the superintendent of the Bureau of Building Inspection or to the city engineer for "all information necessary to enable said contractor to prepare for the execution of any contract for construction, alteration or improvement of any building, structure, street, road or way" and that such information shall be made available "in order to enable said contractor to prepare for the execution or performance of such contract; all without charge, and when in order to obtain said information, an inspection or investigation of the site on which said contract is to be performed is necessary, said inspection and investigation shall be made." The court held the ordinance invalid and that its purpose was regulation, not revenue. The same is true with respect to the ordinance provisions under consideration: their purpose is regulation.

The electrical code contains detailed specific fees for miscellaneous inspections, reinspections, and other services which are set forth in the margin.[6] The code expressly requires the payment of a $2.00 fee for any electrical wiring for which a permit is required but for which no fee is provided. (§ 93.60.)

Section 93.64 compels a state-licensed contractor to *register* with the electrical division of the Department of Building and Safety before he may obtain a permit for electrical installations and wiring in the city. As we have noted, no per-

---

[6]No person shall do, install, alter, reconstruct, or repair any electrical wiring or cause or permit the same to be done without a permit from the Board of Building and Safety Commissioners, referred to as the commissioners. (§ 93.35.) No permit shall be issued to any person except one who holds a valid, unsuspended, unrevoked, and unexpired certificate to do electrical wiring, which certificate is issued by the commissioners. (§§ 93.36.1, 93.561.) A comprehensive schedule of fees is provided for permits, installations, inspections, and reinspections. (§§ 93.50-93.62, 93.66-93.69.) A fee of $1.00 for issuing each permit, original or supplemental, and a fee for any additional electrical wiring. (§ 93.50.) Fees for each outlet, each lighting fixture, for special incandescent lighting, for temporary and yard lighting, for gas tube lighting, signs and marquees, fixed motors, for transformers, industrial, and commercial heating, and miscellaneous equipment, for all kinds of household electrical equipment, for giving incorrect address or wrong location requiring extra inspection trips. (§§ 93.51-93.59.) Fees for motion picture machine projectors, spotlights, steropticon and effect machines, for changing, relocating or reinstalling an existing service or meter loop, for connecting existing electrical installation in a moved building, for busways, power ducts and similar equipment, for trolley collector ducts, feed rails, and plug-in devices. (§§ 93.61-93.67.) Fees for additional inspections whenever it is necessary to make more than two inspections of an installation: 3rd inspection—$1.50 additional; 4th inspection—$1.50 additional; 5th inspection—$2.50 additional; 6th inspection—$5.00 additional. (§ 93.68.)

son may engage in or carry on the business of electrical contracting, or install, alter, or repair any electrical wiring in the city, without having first registered and obtained a certificate of registration. (§ 93.561.) No person may do so after the certificate of registration issued to him has expired or has been revoked or suspended, without first registering and obtaining a new certificate. (§§ 93.564, 93.582.) An application for a certificate of registration must be made in writing to the Board of Building and Safety Commissioners. (§ 93.571.) The commissioners, prior to the issuance of the certificate of registration, shall briefly examine the applicant and pass upon his qualifications and experience. If he passes, the commissioners shall, upon the payment of the registration fee and the filing and approval of the bond, issue a certificate of registration for one year. If the commissioners *for any reason* refuse to issue the certificate of registration, the applicant, within ten days, may appeal to the commissioners for a public hearing. The determination of the commissioners on such appeal is final and conclusive. (§ 93.574.) A certificate of registration may be suspended or revoked for specified reasons. (§ 93.578.)

Sections 93.64 and 93.65 of the Los Angeles ordinance were enacted shortly after the decision in the Boss case. (83 Cal.App.2d 445.) We think it apparent that they are an attempt, under the guise of regulating the quality and character of installations and the exercise of the power of inspections and permits, to do what the Horwith and Boss decisions say cannot be done. Prior to and since the Boss decision, section 93.573 quoted in footnote 3, *supra,* has provided that every person before being entitled to be registered, or to obtain a certificate of registration as provided in the electrical code, shall pay to the Board of Building and Safety Commissioners a registration fee of $100. In enacting section 93.64 all that the city did, in effect, was to change the words "registration fee" in section 93.573 to "permit service fee," and to add that the $100 shall be used to defray expenses. Prior to and since the Boss decision, section 93.572 of the ordinance has provided that every application for a certificate of registration shall be accompanied by a surety bond executed to the city. Section 93.65 is identical with section 93.572. When the Boss case was decided it became apparent that sections 93.572 and 93.573 were invalid. Sections 93.64 and 93.65 were then enacted in an effort to avoid the invalidity

without repealing section 93.572 or 93.573. Our conclusion in this respect is fortified by the fact, stated by plaintiff and admitted by defendants, that the city does not require the payment of a catchall fee or the furnishing of a bond by any contractors except electrical contractors.

The answer alleges that since August 12, 1946 (the Horwith decision became final July 8, 1946) defendants have not required state-licensed contractors to pay the fee mentioned in section 93.573, and that they do not require state-licensed contractors to furnish the bond required by section 93.572. These allegations, of course, were deemed denied. Defendants offered no evidence to establish them. Assuming their truth, the fact remains that they have not been repealed; if valid, they are still the law, and their existence as law requires that they be taken as part of the electrical code and that sections 93.64 and 93.65 be construed with them.

The phrase in section 93.64—"other services not specifically mentioned in this Article,"—is indefinite, uncertain, and sufficiently broad to include services having no relation to the electrical division of the Department of Building and Safety or to the business of electrical contracting. The character of these services is not disclosed. Section 93.60 enacted August 26, 1949, specifically provides that "The fee for any electrical wiring for which a permit is required, but for which no fee is provided herein, shall be $2.00; . . ." ▌ Further, section 93.64 requires the payment of $100 annually whether or not any miscellaneous inspections, reinspections, or other services are made or performed. The section unites all electrical contractors in one body and compels each of them to pay for services supposedly rendered to them as a whole, no matter whether one or any of them receives the alleged service. Payment is required whether the permit is issued for one day or for one year. The language of section 93.64 is almost identical with that of the San Francisco ordinance denounced in *City & County of San Francisco* v. *Boss*, 83 Cal.App.2d 445 [189 P.2d 32].

To be lawful, a permit service fee, covering miscellaneous inspections, reinspections, and other services, should be imposed for the purpose of defraying the expenses incidental to the services in fact rendered and should be approximately commensurate with such expenses. Section 93.64 fixes the fee at $100 per calendar year or any fraction thereof. The fee is the same for one month or one day as for one year, although the work supposedly done may be only 1/12 or

1/365 as much as for a calendar year. Patently, the permit service fee is not to defray expenses of miscellaneous inspections, or reinspections, or other services. A similar ordinance was condemned in *City of Tucson* v. *Stewart*, 45 Ariz. 36 [40 P.2d 72, 76-7, 96 A.L.R. 1492].

 Notwithstanding the state law which authorizes a contractor holding a state license to contract anywhere in the state, this ordinance limits his right to contract in Los Angeles unless he registers with the electrical division of the city, pays the city $100, furnishes the bond, and obtains a permit from the city. The provisions of the ordinance do not come within the category mentioned in the Horwith case (74 Cal.App.2d 443)—regulations as to the quality and character of installations. They do not in any way provide for the quality or character of installations or for inspection of work done, but attempt to provide a means by which a contractor with a state license may be denied the right to contract or work in Los Angeles. The general law is complete in itself. It is not simply prohibitory. It is also permissive. It authorizes contractors licensed by the board to engage in their occupations anywhere in the state. It clearly appears that the general law and the attacked provisions of the electrical code—the one permitting, the other prohibiting, the same act, except on more onerous terms—are in direct conflict with each other.

It is argued that the registration requirements of sections 93.560-93.584 of the electrical code can be validly applied to contractors not required to hold a state license. The argument is fallacious. It is unlawful for *any person* to engage in the business or act in the capacity of an electrical contractor without a state license, with exceptions not applicable here. (Bus. & Prof. Code, § 7028.)

 The requirement of a bond is obviously a regulation of the business of electrical contracting. It nullifies the permission given a contractor by the general law to conduct his business at any place in the state. The general law requires a bond only as a condition for reinstatement. (Bus. & Prof. Code, § 7071.5.) A municipality may not impose a more stringent or additional requirement.

In *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225], the plaintiff filed a claim with the city, based on the Public Liability Act of 1923. The claim was sufficient if measured by the state law. It was insufficient if measured by the charter of Los Angeles. The city contended its

charter provision requiring itemization of damages was merely supplementary to the general law—an additional requirement, not a contrary requirement—and that it was therefore valid. In holding the charter provision invalid the court declared, page 666: "[W]ith respect to the subjects covered, the 1931 statute [state law] occupies the entire field and it impliedly precludes control to that extent by municipal or local regulation. Thus, a municipality may not curtail or abridge the rights so granted by specifying, through charter provision, a shorter time limitation for the filing of such claims than the period fixed by the statute [Citations.] If a municipality may not impose more onerous conditions affecting the filing period allowed a claimant under the general law, it would reasonably follow that it may not impose more onerous conditions affecting any other matter covered by the statute, such as the contents of the claim. So with the point here involved, the statute requires the claimant to specify only 'the extent of the injuries or damages received.' The charter's provision that the claim itemize the several elements of damage and set forth the total demand is manifestly a more burdensome condition of recital as to the matter of damages than the requirement of the statute. Such charter provision is necessarily inconsistent with the general form of claim presentation adopted by the Legislature for operation throughout the state. . . . But since the enactment of the claim statute of 1931, the provisions of that statute 'are exclusive' in regulating the presentation of claims arising under the Public Liability Act, and no city charter provisions relating to the presentation of claims, whether adopted before or after the effective date of the statute, are applicable within the field covered thereby.''

Each city and county has the same legislative power under the Constitution. (Art. XI, § 11.) If defendants' contention is sound, every contractor is subject to local legislative control although the Legislature has authorized a state-licensed contractor to engage in his occupation anywhere in the state. If Los Angeles can impose an omnibus permit service fee of $100 annually and require that a bond be given, every city in the state may impose a similar fee upon the same state-licensed contractor and require him to give a bond if he crosses its border.

Cases relied on by defendants such as *In re Hoffman*, 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75], *In re Iverson*, 199 Cal. 582 [250 P. 681], and *Natural Milk Prod. Assn.* v. *City*

*& County of San Francisco,* 20 Cal.2d 101 [124 P.2d 25], are cases which uphold the generally recognized power of local authorities to enact additional local regulations. They have no application where the Legislature has occupied the field completely. (See *Pipoly* v. *Benson,* 20 Cal.2d 366, 373-374 [125 P.2d 482, 147 A.L.R. 515].)

We conclude that sections 93.64 and 93.65 attempt to impose additional requirements in a field which is fully occupied by the general law, and are unconstitutional since they conflict with the provisions of the Business and Professions Code providing for licensing and regulating contractors, by attempting to legislate upon a subject intended to be fully covered by an act of the Legislature.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied May 15, 1952, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1952.