[Civ. No. 24676.   Second Dist., Div. Three.   Apr. 5, 1961.]

R. W. AGNEW, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

R. W. Agnew, in pro. per., for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Marcus E. Crahan, Jr., Deputy City Attorney, for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment of dismissal entered on the sustaining of defendants' demurrer to an "Amended Second Supplemental Complaint." Plaintiff was granted leave to amend "with directions that the Amended complaint consolidate such allegations of the Complaint as plaintiff considers applicable with those of the Supplemental Complaints, in one coordinated pleading." Plaintiff declined to amend or to consolidate, and judgment of dismissal followed. Plaintiff also appeals from numerous intermediate orders, including an order denying a preliminary injunction. The intermediate orders other than that denying a preliminary injunction are not appealable, and the appeals from those orders will be dismissed. ▮ Normally, an order denying a preliminary injunction is appealable. (Code Civ. Proc., § 963; *McCarty* v. *Macy & Co.*, 153 Cal.App.2d 837, 840 [315 P.2d 383].) That order dealt solely with the right to preventive relief pending final judgment and denied such relief. The entry of judgment rendered the question of the right to interim relief moot and the appeal from that order will also be dismissed. (*Agnew* v. *City of Los Angeles*, 51 Cal.2d 1, 2 [330 P.2d 385].)

Plaintiff, an electrical contractor licensed by the state under sections 7000-7145 of the Business and Professions Code, brought this suit to enjoin enforcement of certain ordinances of defendant city of Los Angeles on the ground they conflicted with general law and thus were unconstitutional under article XI, section 11, of the Constitution. The suit was filed May 23, 1957.

The Municipal Code of Los Angeles required a permit to install electrical wiring. To receive the permit, the contractor was compelled to register with the city; to submit a description of the proposed electric wiring, plans and specifications and a suitable diagram and "such additional information as may be considered necessary by the Department for the proper enforcement of the provisions of this Code"; and to appear personally at an office of the department and furnish miscellaneous information. The electrical code required that the contractor, in order to obtain a license tax registration certificate number, pay the city clerk a fee based on the amount of his gross receipts.

The trial court sustained defendants' demurrer to the original complaint without leave to amend and entered judgment for defendants. On appeal the Supreme Court reversed, holding the state had occupied the field of licensing electrical contractors and that the challenged provisions of the ordinance were invalid to the extent they conflicted with the Business and Professions Code. (*Agnew* v. *City of Los Angeles,* 51 Cal.2d 1 [330 P.2d 385].) The sections of the municipal code held invalid were numbered 11.00, 21.03, 21.06, 21.08, 21.09, 21.12(a), 21.12(b), 21.188, and 21.190. The sections of the electrical code held invalid were numbered 93.0201, 93.0204, 93.0205(2), 93.0501, and 93.0504. The electrical code is part of the municipal code.

On December 8, 1958, after the remittitur went down on the prior appeal, the municipal code was amended to provide:

"Section 1. Section 93.0104 of the Los Angeles Municipal Code is hereby amended to read:

"SEC. 93.0104. PROHIBITED ACTS

"No person shall install, use, operate or maintain any electric wiring or equipment which does not comply with all provisions of this Code. No person shall offer for sale, rent, lease or distribution any electrical equipment which does not comply with all applicable provisions of this Code. No person shall use, operate or maintain any electrical wiring after the effective date of this ordinance unless an application for inspection has been issued therefor by the Department.

"Sec. 2. Sections 93.0201 and 93.0205 of the Los Angeles Municipal Code are hereby amended to read:

"SEC. 93.0201. APPLICATION FOR INSPECTION REQUIRED

"No person shall perform, allow or cause to be performed

the following acts on premises owned, operated, rented or leased, or controlled by him, directly or indirectly, in whole or in part, unless an application for inspection has been issued to him or his authorized agent.

"1. The installation of electric wiring;

"2. The alteration, reconstruction or repair of electric wiring.

"Sec. 93.0205. Who May Obtain Applications for Inspection

"Applications for Inspection shall be issued only to the owner, manager, lessee or tenant, or his duly authorized agent, of the premises upon which the work for which said application is required is to be done.

"Sec. 3. Subsection (a) of Section 93.0206 of the Los Angeles Municipal Code is hereby amended to read:

"(a) Plans and specifications required by the provisions of Subsection (b) of this section shall be prepared by, and bear the signature and registration number of an Electrical Engineer who is duly registered by the State of California Board of Registration for Civil and Professional Engineers.

"Exception:

"Plans and specifications required for Items 7 to 10, inclusive, of Subsection (b) of this section may be prepared and submitted by a person holding a State License as an Electrical Contractor or by a Maintenance Certificate Holder.

"Sec. 4. The Exception of Subsection (i) of Section 93.0206 of the Los Angeles Municipal Code is hereby repealed.[1]

"Sec. 5. Section 93.0210 of the Los Angeles Municipal Code is hereby repealed.[2]

"Sec. 6. Subsection (d) of Section 93.0229 of the Los Angeles Municipal Code is hereby amended to read:

"(d) The Department may recheck installations upon which violations continue to exist at intervals of 30 days or more until either the violations are eliminated or a total of three rechecks are made. The fees specified in Subsection (b) of this section shall apply for each recheck inspection.

---

[1]The exception reads: "Exception: When satisfactory to the Department a permit may be issued to a registered contractor before the required diagram is submitted."

[2]Section 93.0210 empowered the Board of Building and Safety Commissioners to refuse to issue subsequent permits to any person who failed, refused, or neglected to comply with any provisions of the Electrical Code after notice.

"Sec. 7. Section 93.0501 of the Los Angeles Municipal Code is hereby amended to read:

"SEC. 93.0501. QUALIFIED PERSON

"(a) It is unlawful for any person who is not qualified to install, alter, reconstruct or repair any electrical wiring unless such person is under the direct supervision of a qualified person.

"(b) A qualified person is one who holds a valid Contractor's License in the proper classification issued by the State of California, or one who holds a valid Certificate of Registration issued pursuant to this Division, or one who is a home owner and who has been qualified to satisfactorily perform work in or on his own single family dwelling.

"Sec. 8. Whenever in any section of Article 3 of Chapter 9 of the Los Angeles Municipal Code [the Electrical Code] the word 'permit' appears, said section shall be deemed to be amended by the insertion of the words 'application for inspection' in lieu thereof. Whenever in any section of said Article and Chapter the word 'permittee' appears, said section shall be deemed to be amended by the insertion of the word 'applicant' in lieu thereof.

"Sec. 9. This ordinance is hereby declared to be urgently required for the immediate preservation of the public peace, health and safety, and shall take effect immediately upon its publication.

"The following is a statement of facts showing its urgency:

"A recent decision of the California Supreme Court has invalidated the present electrical code system of registration and permits with respect to State licensed electrical contractors. This results in the absence of ordinance authority for regulation and control of the character and quality of electrical installation. This lack of authority directly affects the public health, welfare and safety."

On December 16, 1958, the municipal code was amended to provide:

"Section 1. Subsection (b) of Section 21.00 of the Los Angeles Municipal Code is hereby amended to read:

"'LICENSE TAX' shall mean the privilege tax imposed upon persons engaged in the businesses or occupations described in Sections 21.50 to 21.198, inclusive of this Article for the privilege of engaging in such businesses or occupations within the City of Los Angeles. . . .

"Sec. 2. Section 21.03 of the Los Angeles Municipal Code is hereby amended to read:

"IMPOSITION OF TAX

"(a) Subject to the provisions of this Article, a license tax registration certificate must be obtained and a license tax must be paid by every person engaged in any of the businesses or occupations specified in Sections 21.50 to 21.198, inclusive, of this Article; and a license tax is hereby imposed in the amount prescribed in the applicable section. No person shall engage in any business or occupation subject to tax under the provisions of this Article without obtaining a registration certificate and paying the tax required thereunder.

"(b) The license tax registration certificate required to be obtained and the tax required to be paid are hereby declared to be required pursuant to the taxing power of the City of Los Angeles solely for the purpose of obtaining revenue. Compliance with such requirements shall not be construed to be a condition precedent to engaging in any business or occupation within the City of Los Angeles where the imposition of such a condition precedent would be contrary to law."

Thereafter numerous pleadings were filed by both parties and divers proceedings had, concluding with plaintiff's filing the amended second supplemental complaint. That complaint is a complete pleading. As defendants say, it does not merely add to the original complaint something which occurred after that complaint was filed; it is, in fact, an amended complaint as well as a supplemental complaint. (See *Koeper* v. *Koeper,* 125 Cal.App.2d 118 [269 P.2d 905].) It superseded the preceding pleadings. The question is: Does it state facts sufficient to constitute a cause of action?

The amended second supplemental complaint avers the amendments of the municipal code quoted above and numerous of its provisions *in haec verba,* alleges they conflict with the Business and Professions Code and therefore are invalid, and that defendants have threatened to enforce them against plaintiff. The prayer is for an injunction that would restrain defendants from enforcing such provisions. A number of the provisions averred have no application to the issue. The relevant ones will be referred to.

Section 93.0204 reads:

"(a) Before any permit is issued the person desiring the

permit shall make an application therefor to the Department on a form furnished by the Department.

"(b) Every application shall give complete information as required on the application and shall include:

"1. A complete description of the proposed electric wiring; and

"2. Such additional information as may be considered necessary by the Department for the proper enforcement of the provisions of this Code.

"(c) Every application shall be accompanied by approved plans and specifications or a suitable diagram when and as required by Section 93.0206.

"(d) Nothing contained in this Code shall be construed to require the Department to immediately accept or reject any application, whenever it is necessary to investigate the proposed wiring and premises as to its compliance with this Code, or it is necessary to check plans and specifications accompanying the application."

This is in accord with general law. (Health & Saf. Code, §§ 15351-15354.) The application requires the name and address of the owner and the name and address of the contractor and his state license number.

It is noted, as appears above, that by the amendment of December 8, 1958, whenever the word "permit" appears, the words "application for inspection" are inserted in lieu of the word "permit."

It is expressly provided in the State Housing Act that the name and address of the owner's contractor, the plans, and the specifications shall be required before a permit will issue. (Health & Saf. Code, §§ 15353, 15354.) The requirement of the State Housing Act and of the municipal code that plans and specifications be submitted before a permit issues is only a means to ensure that they comply with the act and the city building codes. The city may require them so long as no inquiry is made into the qualifications of the contractor. The Legislature has recognized the fact by adding section 7032 to the Business and Professions Code in 1959.[3]

---

[3]Section 7032: "Nothing in this chapter shall limit the power of a city or county to regulate the quality and character of installations made by contractors through a system of permits and inspections which are designed to secure compliance with and aid in the enforcement of applicable state and local building laws, or to enforce other local laws necessary for the protection of the public health and safety. Nothing in this chapter shall limit the power of a city or county to adopt any system of permits requiring submission to and approval by the city or

Section 93.0208 reads: "If the Department finds that the work represented by the plans, specifications, or diagram filed with the permit application conforms to all applicable requirements of this Code, the Department may issue a permit to the qualified applicant upon receipt of the total fees as required by Section 93.0213." This is in accord with general law. (Health & Saf. Code, § 15356.)

Section 11.00(m) of the municipal code makes it a misdemeanor to violate any of its provisions or to fail to comply with any of its requirements. This is in accord with general law. (Health & Saf. Code, §§ 17900, 17901.)

The city "may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Const., art. XI, § 11. See Stats. 1925, ch. 5, p. 1024.)     The granting or denying of building permits is a municipal affair over which a municipality has supreme control subject only to the rule that it must exercise sound discretion. (*Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 310-313 [144 P.2d 4] ; *Hunter* v. *Adams,* 180 Cal.App.2d 511, 518-519 [4 Cal.Rptr. 776].) The state has specifically delegated to cities all matters with respect to the local inspection, control, and regulation of building construction, and also the duty and responsibility of enforcing state legislation in this field. (Health & Saf. Code, §§ 15153, 15250, 15290-15292, 15351-15362, 15380-15388, 19825.)

Section 15153 of the Health and Safety Code reads: "Subject to the provisions of Section 15153.2 the governing body of any city or county may enact ordinances or laws imposing restrictions greater than those imposed by this part, or prescribing fees for permits, certificates, or other papers required by this part."[4]

It is settled that a municipality may regulate the materials used and the method of installation. (62 C.J.S., § 257, p. 609. *Cf. Parker* v. *Colburn,* 196 Cal. 169, 174-175 [236 P. 921] ; *Green* v. *Menveg Properties, Inc.,* 126 Cal.App.2d 1, 12 [271 P.2d 544].)

---

county of plans and specifications for an installation prior to the commencement of construction of the installation.

"Nothing contained in this section shall be construed as authorizing a city or county to enact regulations relating to the qualifications necessary to engage in the business of contracting." (Added Stats. 1959, ch. 1403, pp. 3681, 3682.)

[4]Section 15153.2 applies to the installation of plumbing outside buildings in the unincorporated area of a county.

"Legislation requiring that a permit be issued by a municipality as a condition precedent to the erection of a structure on property privately owned, or to the use that may be made of such property, if reasonable, is a valid exercise of the police power. (*City of Yuba City* v. *Cherniavsky*, 117 Cal.App. 568, 572 [4 P.2d 299]; 43 C.J. § 373, p. 345.)" (*Trans-Oceanic Oil Corp.* v. *City of Santa Barbara*, 85 Cal. App.2d 776, 783 [194 P.2d 148].) The requirement of a permit is in accord with general law. (Health & Saf. Code, §§ 15007, 15351.)

The municipal code, as amended, does not interfere with state regulations or prescribe qualifications for electrical contractors different from or in addition to those prescribed by the state. The Business and Professions Code requiring that all electrical contractors be licensed by the state is primarily concerned with regulation of their qualifications. (Bus. & Prof. Code, §§ 7026, 7059.) The effect of the amendments to the municipal code made after the decision on the prior appeal was to remove contractor registration provisions; to remove the condition of payment of business license taxes and electrical permits as a requirement of obtaining such registration; to repeal a provision which permitted the withholding of electrical permits and inspection from state-licensed contractors who refused to comply with the provisions of the electrical code; to make state-licensed electrical contractors qualified to do electrical wiring in the city; to change the terminology of the electrical permit system to an "application for inspection" system; to expressly declare that the intent of the city's business license tax system is an exercise of the taxing power for revenue purposes only.

The challenged provisions of the municipal code are presumed to be valid (*In re Petersen*, 51 Cal.2d 177, 182 [331 P.2d 24]), and enforcement is presumed to be lawful. (Code Civ. Proc., § 1963, subd. 15.) An injunction will not issue to prevent a legislative act by a municipal corporation unless a showing of invalidity is made. (Code Civ. Proc., § 526, 2d subd. 4, 2d subd. 7; Civ. Code, § 3423, subds. 4, 7. See *City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423, 430 [333 P.2d 745].)

As said by the Supreme Court on the prior appeal, "a municipality may tax electrical contractors, as other trades, professions and businesses are taxed." (*Agnew* v. *City of Los Angeles*, 51 Cal.2d 1, 7 [330 P.2d 385].) There is nothing objectionable in the prepayment requirement of

the municipal code. *In re Groves,* 54 Cal.2d 154 [4 Cal.Rptr. 844, 351 P.2d 1028], was a proceeding in habeas corpus. The petitioner secured a state license to operate a milk products plant in Palm Springs for the manufacture and sale at retail of ice cream products. (Agr. Code, §§ 660-661.) The Palm Springs Business License Ordinance provided for the licensing of businesses and the payment of business license fees by those engaged in business in the city. The ordinance made it unlawful for any person to commence any business, vocation, profession, or calling without having procured a license to do so. The fee applicable to petitioner's business was $100 a year. The court said the ordinance had been invoked specifically against the petitioner solely for revenue purposes, and that [p. 156] "Whether or not state law has occupied the field of regulation, cities may tax businesses carried on within their boundaries and enforce such taxes by requiring business licenses for revenue and by criminal penalties." With respect to cases relied on by plaintiff at bar, the court stated (p. 157):

"Petitioner contends, however, citing *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1 [330 P.2d 385], *Agnew* v. *City of Culver City,* 51 Cal.2d 474 [334 P.2d 571], and *Agnew* v. *City of Culver City,* 147 Cal.App.2d 144 [304 P.2d 788], that city business taxes may not be enforced against persons licensed under state law by requiring them to secure business licenses or suffer criminal penalties. In the Agnew cases the license fees were not imposed solely for revenue purposes but as an inseparable part of a regulatory scheme excluded by state law. (See also *Agnew* v. *City of Los Angeles,* 110 Cal.App.2d 612, 619-623 [243 P.2d 73]; *Lynch* v. *City of Los Angeles,* 114 Cal.App.2d 115, 118-120 [249 P.2d 856]; *City & County of San Francisco* v. *Boss,* 83 Cal.App.2d 445, 452 [189 P.2d 32].) In the present case, however, the city seeks to enforce its licensing ordinance against petitioner for revenue only, and as the Agnew cases expressly recognized, such taxation is not excluded because the state has occupied the field of regulation."

The same is true in the case at bar. As specifically stated in the ordinance enacted December 16, 1958, the "license tax registration certificate required to be obtained and the tax required to be paid are hereby declared to be required pursuant to the taxing power of the City of Los Angeles solely for the purpose of obtaining revenue." They are not an inseparable part of a regulatory scheme excluded by state law.

The ordinance considered in *Arnke* v. *City of Berkeley*, 185 Cal.App.2d 842 [8 Cal.Rptr. 645], stated (p. 933) it was "enacted solely to raise revenue for Municipal purposes, and is not intended for the purpose of regulation." It made it unlawful for any person "to commence, transact or carry on any business in the City of Berkeley not excluded by this Ordinance, without first having procured a license from said City so to do, or without complying with any and all regulations contained in this Ordinance." It required the payment of "a semi-annual license tax based upon the average number of employees as defined in Section 1.2-6 of this Ordinance, and upon the annual rates provided for in Section 5.1 hereof." It was contended [p. 934] the ordinance required "plaintiff first to pay a license fee before doing business with the city of Berkeley, which conflicts with and nullifies the permission given the contractor by general law to conduct his business at any place in the state." Holding the ordinance valid, the court stated (p. 935):

"In the instant case, the city seeks to enforce its licensing ordinance against appellant for revenue only and the Agnew cases, *supra*, expressly recognize that such taxation is not excluded because the state has occupied the field of regulation. . . .

"[P. 938.] Appellant fails to distinguish between the kinds of ordinances which were under consideration in the Agnew cases from the one under consideration here. In the Agnew cases, the ordinances were regulatory in nature and the Berkeley ordinance is one purely for revenue purposes."

▉▉▉ We hold that the provisions of the Los Angeles Municipal Code which plaintiff attacks do not conflict with general laws and that they are valid. The amended second supplemental complaint does not state facts sufficient to constitute a cause of action.

In his closing brief plaintiff challenges the validity of various provisions of the municipal code providing for taxes on businesses. Since these provisions were not attacked in the amended second supplemental complaint the point may not be considered. In any event, provisions of the same character were upheld in *In re Galusha*, 184 Cal. 697, 699 [195 P. 406]; *Franklin* v. *Peterson*, 87 Cal.App.2d 727, 731 [197 P.2d 788]; *City of San Mateo* v. *Mullin*, 59 Cal.App.2d 652, 654 [139 P.2d 351]; *In re Johnson*, 47 Cal.App. 465, 468 [190 P. 852]; *In re Groves*, 54 Cal.2d 154, 156-157 [4 Cal.Rptr. 844, 351 P.2d 1028].)

The judgment is affirmed. The appeals from all other orders are dismissed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied May 3, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 31, 1961.