REQUESTED BY: Senator Gary E. Hannibal Nebraska State Legislature State Capitol, Room 1004 Lincoln, Nebraska 68509
Dear Senator Hannibal:
You have requested our opinion regarding the authority of a municipality to enact an ordinance establishing licensing and regulatory requirements for general building contractors and certain subcontractors doing business in the municipality. The city in question, which would be classified as a city of the first class pursuant to Neb.Rev.Stat. Sections 16-101 (Reissue 1983), has passed an ordinance generally requiring such contractors to pay an annual license or registration fee of $100.00, and to provide a surety bond and certificate of insurance.
The general rule regarding the authority of a municipality to enact ordinances to regulate and license activities or businesses within its jurisdiction is stated in 51 Am.Jur.2d, Licenses and Permits, Sections 93, p. 94 (1970), as follows:
Under the power to regulate, a municipality may adopt such restrictions as are necessary for the preservation of public health or conducive to the public interest or welfare. One effective mode of regulation commonly adopted by municipalities rests on enactments that make the carrying on of a specified activity illegal in the absence of a license that is to be issued only on the satisfaction of enumerated requirements. And it is generally held that the power to regulate a particular business, occupation, or article, given to a municipal corporation by the terms of its charter or under general state statutes affecting municipalities, includes the power to require a police regulatory license therefor.
Specifically, with respect to the authority of a municipality to license and regulate building contractors, the following principles are stated in 9 E. McQuillin, The Law of Municipal Corporations, Sections 26.109, p. 240 (3d Ed. 1978):
Under appropriate grant of power and by ordinances not in conflict with state law or licensing, municipal corporations can regulate and license contractors, including building and general contractors, master builders, cement contractors, and, in general, contractors doing business in the building or paving trades. In some states, however, this subject is considered not a municipal affair but a matter of state-wide concern, or for which a comprehensive plan of regulation and licensing is established by statute, covering the entire field of examination, competency, character and responsibility of contractors.
Some jurisdictions have held that, where the regulation and licensing of contractors is required pursuant to state statute, municipalities are prohibited from enacting ordinances imposing additional licensing or regulatory requirements. Agnew v. City of Los Angeles, 110 Cal.App.2d 612,243 P.2d 73 (1952) (electrical contractors); Collins v. Priest, 95 Cal.App.2d 179, 212 P.2d 269 (1949) (plumbing contractors). Our research, however, reveals no comprehensive statutory scheme of state licensing or regulatory requirements for building contractors in Nebraska.
In Concrete Contractors' Association of Greater Chicago v. Village of La Grange Park, 14 Ill.2d 65, 150 N.E.2d 783
(1958), the Supreme Court of Illinois upheld the validity of two village ordinances requiring the licensing of persons engaged in concrete construction work. Discussing the source of the authority for the villages to impose the licensing requirements, the court stated:
The fact that the villages have not been granted express power to license concrete contractors is not controlling if the General Assembly has expressly granted to the villages one or more powers, the efficient exercise of which requires that the business of the contractors be regulated.
To determine whether defendant villages are impliedly authorized to license persons engaged in cement work, the licensing ordinances must be considered in conjunction with the powers which are expressly granted and are being lawfully exercised. If the licensing ordinances are reasonably necessary to effectuate the regulations prescribed by other valid ordinances dealing with the same subject matter, they may be sustained as regulatory measures. Id. at ___,150 N.E.2d at 785-86. Accord, Village of Maywood v. Weglarz,24 Ill.App.2d 495, 165 N.E.2d 362 (1960) (upholding validity of licensing and building requirements imposed on carpenter contractors under village ordinance).
The court in Village of La Grange Park, supra, further held the villages had the power to compel payment of a license fee pursuant to the exercise of this regulatory authority, stating:
The power to exact a license fee to defray all or a part of the cost of the regulation or inspection is implicit in the power to regulate.
Ordinances licensing occupations and persons engaged therein have frequently been sustained as implied from one or more statutory powers of regulation. 14 Ill.App.2d at ___, 150 N.E.2d at 786.
Neb.Rev.Stat. Sections 16-234 (Reissue 1983) grants cities of the first class authority to enact ordinances prescribing "the thickness, strength, and manner of constructing stone, brick, and other buildings. . . ." In addition, cities of the first class are granted broad authority to enact ordinances to promote the public safety, health, and welfare under Neb.Rev.Stat. Sections 16-246 (Reissue 1983), which provides, in pertinent part:
A city of the first class may make all such ordinances, bylaws, rules, regulations, and resolutions not inconsistent with the general laws of the state, as may be necessary or expedient, in addition to the special powers otherwise granted by law, for maintaining the peace, good government, and welfare of the city and its trade, commerce, and manufactures, and for preserving order, securing persons or property from violence, danger, and destruction, for protecting public and private property, for promoting the public health, safety, convenience, comfort, morals, and general interests, and welfare of the inhabitants of the city.
The powers granted cities of the first class pursuant to Sections 16-234 and 16-246 are virtually identical to the statutory grants of authority relied upon to uphold the validity of the licensing ordinances in Village of La Grange Park, supra, and Village of Maywood, supra. Under these circumstances, Sections 16-234 and 16-246 can be viewed as express grants of power which impliedly authorize cities of the first class to enact licensing and regulatory ordinances applicable to building contractors. Licensing ordinances of this nature can be upheld as reasonably necessary to effectuate the regulatory authority granted to such municipalities.
We recognize that, in a 1908 decision, the Nebraska Supreme Court held invalid a city ordinance imposing a licensing requirement on persons constructing certain types of sidewalks. Gray v. City of Omaha, 80 Neb. 526, 114 N.W.2d 600
(1908). We believe the decision in Gray, supra, is not in accord with the present majority view regarding the authority of municipalities to enact licensing and regulatory requirements. In our opinion, the Gray case would no longer be considered as binding or valid precedent in determining the validity of municipal regulatory ordinances of this nature.
Finally, we wish to point out, with respect to the propriety of the amount of the licensing fee imposed, it is generally held that the fee charged must not be unreasonable or confiscatory. See generally, 51 Am.Jur.2d, Licenses and Permits, Sections 114, pp. 111-112 (1970); see also, City of Ord v. Biemond, 175 Neb. 333, 122 N.W.2d 6 (1963). The determination of whether a license fee is unreasonable or excessive rests largely on the particular facts regarding the nature of the regulation and the activity involved. On the basis of the factual information provided to us, we cannot say the license fee in question is inherently unreasonable.
Based on the foregoing, it is our opinion that cities of the first class presently possess implied power to enact ordinances establishing licensing and regulatory requirements for building contractors doing business within the municipality's jurisdiction, provided the license fee and requirements imposed are not unreasonable.
Very truly yours,
ROBERT M. SPIRE Attorney General